UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Zuriel Lavie, | § | |
| | § | |
| *Appellant*, | § | |
| | § | |
| v. | § | Civil Action H-08-1961 |
| | § | |
| Yuval Ran, | § | |
| | § | |
| *Appellee*. | § | |

**ORDER**

Pending before the court is appellant Zuriel Lavie's appeal from the Southern District of Texas Bankruptcy Court's decision denying recognition of the Israeli bankruptcy proceeding involving appellee Yuval Ran as either a "foreign main" or "foreign nonmain" proceeding under Chapter 15 of the Bankruptcy Code.[1]  Dkt. 8.  Having reviewed the parties' briefs, the bankruptcy court's opinion, and the applicable law, the court AFFIRMS the bankruptcy court's rulings.

**I. Background**

Prior to 1997, appellee Yuval Ran ("Ran") was a prominent Israeli businessman and the CEO of Israel Credit Lines Supplementary Financial Services Ltd. ("Credit Lines").  *See In re Ran*, 390 B.R. 257, 260 n.1 (Bankr. S.D. Tex. 2008).  Credit Lines encountered financial difficulties and ultimately began liquidating its interests in 1995.  *Id.*

In April of 1997, Ran left Israel and moved to Houston, Texas, where he and his family have resided continuously since mid-1997.  Ran's wife and five children are U.S. citizens, and Ran is a permanent legal resident of the United States, who possesses a green card and is currently seeking

---

[1] Title 11 of the United States Code will be referred to as the "Bankruptcy Code."

U.S. citizenship. Ran and his wife own a home in Houston and are both employees of a furniture company in the area. Additionally, Ran does not maintain any bank accounts outside of Harris County, Texas. *Id.*

Because of threats to his family in Israel, Ran testified that he does not intend to return to Israel, but rather will remain in Houston indefinitely. In fact, since the relocation in 1997, Ran has not engaged in any business dealings in Israel, other than temporarily helping to collect debts owed to Credit Lines, which ceased in 1998 when receivership and liquidation proceedings for Credit Lines commenced. *Id.*

In July 1997, involuntary bankruptcy proceedings were instituted against Ran in an Israeli court. During the proceedings, Zuriel Lavie ("Lavie") was appointed temporary receiver and, later, by order dated October 28, 1999, trustee of Ran's estate. *Id.* The Israeli court declared Ran bankrupt and ordered the liquidation of Ran's estate. *Id.*

Nearly a decade after Ran and his family emigrated from Israel and more than seven years after being appointed trustee of Ran's estate, on December 11, 2006, Lavie filed a petition seeking recognition of the Israeli bankruptcy proceeding as a foreign main or foreign nonmain proceeding under Chapter 15 of the Bankruptcy Code in the U.S. Bankruptcy Court of the Southern District of Texas. 06-BK-37067, Dkt. 1. The bankruptcy court denied Lavie's petition, and Lavie appealed to this court, which remanded the case to the bankruptcy court for additional findings. 06-BK-37067, Dkts. 22, 33; *Lavie v. Ran*, 384 B.R. 469, 472 (S.D. Tex. 2008).

On remand, the bankruptcy court declined to recognize the Israeli bankruptcy proceeding as either a foreign main or foreign nonmain proceeding, thereby restricting Lavie's access to certain remedies and relief. *In re Ran*, 390 B.R. at 301–02. The bankruptcy court thoroughly analyzed whether the proceeding should be recognized as a foreign main proceeding; however, only a

2

conclusory statement was made regarding the court's finding with respect to denial of foreign nonmain recognition. *Id.* at 260, 262, 262–99. Lavie then filed the instant appeal, again challenging the denial of recognition of the Israeli proceeding as either a foreign main proceeding or foreign nonmain proceeding. Dkt. 8.

## II. ANALYSIS

### A. Standard of Review

"When reviewing a bankruptcy court's decision, the district court functions as an appellate court and applies the standard of review generally used in the federal court of appeals." *Range v. United States*, 256 B.R. 868, 872 (Bankr. S.D. Tex. 2000); *see also Webb v. Reserve Life Ins. Co. (In re Webb)*, 954 F.2d 1102, 1103–04 (5th Cir. 1992). Findings of fact "shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *Range*, 256 B.R. at 872S73; *see also Young v. Nat'l Union Fire Ins. Co. (In re Young)*, 995 F.2d 547, 548 (5th Cir. 1993). However, matters of law are reviewed *de novo*, which "requires the district court to make a judgment independent of the bankruptcy court and without deference to that court's analysis and conclusions." *Range*, 256 B.R. at 873; *see also Summit Coffee Co. v. Herby's Foods, Inc. (In re Herby's Foods, Inc.)*, 2 F.3d 128, 131 (5th Cir. 1993).

### B. Chapter 15 of the Bankruptcy Code

On appeal, Lavie disputes the bankruptcy court's denial of recognition of the Israeli bankruptcy proceeding as either a foreign main or foreign nonmain proceeding. The latter, in the context of an individual debtor, presents a question of first impression.

3

### 1. Statutory Interpretation

The court's review requires statutory analysis of Chapter 15 of the Bankruptcy Code, which inescapably begins with the language of the statute itself. Generally, the "plain meaning" of words should be utilized when interpreting an ambiguous statute or when terms are not otherwise defined. *See, e.g.*, *Mead Corp. v. Tilley*, 490 U.S. 714, 715, 109 S. Ct. 2156 (1989); *Bankamerica Corp. v. United States*, 462 U.S. 122, 122–23, 103 S. Ct. 2266 (1983). Further, "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Mich. Dept. of Treasury*, 489 U.S. 803, 809, 109 S. Ct. 1500 (1989). It is axiomatic that statutes should not be construed in a way that defeats the statutory intent. *See, e.g.*, *United States v. Braverman*, 373 U.S. 405, 408, 83 S. Ct. 1370 (1963).

Unique to the interpretation of Chapter 15 of the Bankruptcy Code, "the court shall consider its international origin, and the need to promote an application of [Chapter 15] that is consistent with the application of similar statutes adopted by foreign jurisdictions." 11 U.S.C. § 1508. Thus, proper analysis requires consulting the Model Law on Cross-Border Insolvency ("Model Law"), the Guide to Enactment of the UNCITRAL Model Law on Cross-Border Insolvency ("Guide"), the reports cited within the Guide, and the UNCITRAL Case Law On Uniform Texts. *See* H.R. REP. NO. 109-31(I), at 109–10 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 172–73.

Likewise, statutes, cases, and interpretative materials of the European Union are also instructive. Hence, the court should consult the European Union's Council Regulation on Insolvency Proceedings ("Regulation"), the European Union's Convention on Insolvency Proceedings ("Convention"), and the Report on the Convention on Insolvency Proceedings ("Virgos-Schmit

Report").[2]  *See* Council Regulation No. 1346/2000, 2000 O.J. (L 160) 1 (EC); Council, Report on the Convention on Insolvency Proceedings, No. 6500/96 (May 2, 1996) (prepared by Miguel Virgos & Etienne Schmit); *see also* Alesia Ranney-Marinelli, *Overview of Chapter 15 Ancillary and Other Cross-Border Cases*, 82 AM. BANKR. L.J. 269, 273S74 (2008).

### 2. Brief Overview of Chapter 15 and Requirements for Recognition

"Chapter 15 . . . [is] designed to optimize disposition of international insolvencies by facilitating appropriate access to the court system of a host country (the United States, in the case of Chapter 15) by a representative of an insolvency proceeding pending in a foreign country." *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund*, 389 B.R. 325, 333 (S.D.N.Y. 2008) (citing 15 U.S.C. § 1521).

Under the predecessor of Chapter 15, Section 304 of the Bankruptcy Code, the ability to provide relief to foreign petitioners was largely discretionary, based on subjective factors and comity. *Id.* However, with the advent of Chapter 15, courts have been divested of much of this discretion and are now directed by objective statutory guidelines. *Id.* Unlike Section 304, as a prerequisite to granting relief pursuant to Chapter 15, the court must "recognize" the foreign proceeding. Once the foreign proceeding is recognized, "flexible and pragmatic" subjective considerations and comity are then weighed in fashioning the appropriate relief. *Id.* at 333–34.

---

[2] The EU's Council Regulation on Insolvency Proceedings is the current statute and is identical in all material respects to the Convention. *See* Case C-341/04, *In re Eurofood IFSC Ltd.*, 2006 E.C.R. I-3813 ¶2. While the Convention is not entirely consistent with the Model Law, the drafters of the Model Law consulted the Convention's terminology. *See* Guide, U.N. Gen. Ass., UNCITRAL 30th Sess., ¶ 75, U.N. Doc. A/CN.9/442 (1997) (noting that certain terms were inspired by or followed a similar definition in the Convention). In turn, the Convention is better understood by consulting the Virgos-Schmit Report. Although the language of the Virgos-Schmit Report and Convention may not be identical to that in the Bankruptcy Code, the corresponding sections of both the Virgos-Schmit Report and the Convention give insight into the origin of the terms used. *See* H.R. REP. NO. 109-31(I), at 109 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 172.

Pursuant to Section 1517(a), the court "shall" order recognition if:

(1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;
(2) the foreign representative applying for recognition is a person or body; and
(3) the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a). This statutory mandate is subject to a narrow public policy exception, which is outlined in Section 1506. This exception permits a court to refuse recognition "if the action would be manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506. However, the exception is "intended to be invoked under exceptional circumstances concerning matters of fundamental importance for the [United States]." *In re Tri-Continental Ltd.*, 349 B.R. 627, 638 n.16 (Bankr. E.D. Ca. 2006).

Here, the second and third elements are indisputably met; therefore, the court focuses only on the requirement outlined in the first element, that the foreign proceeding constitutes either a foreign main proceeding or a foreign nonmain proceeding.

### 3. Foreign Main and Foreign Nonmain Proceedings

"A foreign proceeding, as defined by Chapter 15, can be one of three types: a main proceeding, a non-main proceeding, or simply a foreign proceeding that is neither main nor non-main." *In re Tradex Swiss*, 384 B.R. 34, 42 (Bankr. D. Mass. 2008); *see also* H.R. REP. NO. 109-31(I), at 107 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 170. A foreign proceeding must be classified as either a foreign main or foreign nonmain proceeding in order to be recognized and for relief to be afforded under Chapter 15. 11 U.S.C. § 1517(a)(1).

#### i. Foreign Main Proceedings

A foreign main proceeding is "a foreign proceeding pending in the country where the debtor has the *center of its main interest*." 11 U.S.C. § 1502(4) (emphasis added). The phrase "center of

main interest" ("COMI") is a term of art, which the Bankruptcy Code does not define explicitly. Chapter 15 does provides that: "In the absence of evidence to the contrary, the debtor's registered office, or habitual residence in the case of an individual, is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c). This presumption can be rebutted by evidence to the contrary. *See In re Tri-Continental*, 349 B.R. at 634.

American courts have defined COMI primarily in the context of corporate debtors. In these cases, the courts equate COMI with the concept of a principal place of business, looking at factors such as "the location of the debtor's headquarters; the location of a debtor's management; the location of its assets and creditors; and the site of the controlling law." *In re Tradex Swiss*, 384 B.R. at 43. However, the court in *In re Loy* addressed the concept of COMI with respect to an individual debtor, relying predominantly on the statutory presumption that the debtor's habitual residence constituted the debtor's COMI, absent a contrary showing. *In re Loy*, 380 B.R. 154, 162 (Bankr. E.D. Va. 2007). The court did recognize that factors, such as "the location of a debtor's primary assets; the location of the majority of the debtor's creditors . . . would be affected by the case; and the jurisdiction whose law would apply to most disputes," may be considered. *Id.* (citing *In re SPhinX*, 351 B.R. at 117 and *In re Bear Stearns*, 374 B.R. at 128).

Foreign courts have addressed squarely the definition of COMI in a variety of contexts. European courts generally have found that the individual debtor's COMI is his habitual or permanent residence. *See Pedro Magdalena Fernandez v. Commission of the European Communities* (C-452/93) [1994] ECR 4295 (ECJ 3rd Chamber 1994); *Anciens Etablissements d'Angenieux Fils Aine v. Hakenberg* (Case 13/73), [1973] ECR 935 (ECJ 1973) (France). According to the European courts, the existence of a habitual residence largely depends on whether the debtor intends to stay in the location permanently. *See, e.g.*, Case 41/84, *Pinna v. Caisse d'Allocations Familiales de la*

7

*Savoie*, [1986] E.C.R. 1 (ECJ 1986) (France). Other factors pertinent to a finding of a habitual residence include the length of time spent in the location and the occupational or familial ties to the area. *See, e.g.*, *id.* Although these factors are helpful, they are not determinative if other evidence suggests the debtor's COMI is elsewhere. *See Schaflein v. Commission of the European Communitiies*, (Case 284/87) [1988] ECR 4475 (ECJ 2nd Chamber 1988).

A foreign court's determination that its jurisdiction is the debtor's COMI is not binding on a U.S. court. Instead, Chapter 15 requires the U.S. court to make an independent finding *at the time the petition for recognition is filed* in the U.S. court, rather than hindsight, when the insolvency proceedings were initiated in the foreign jurisdiction. *See In re SPhinX, Ltd.*, 351 B.R. 103, 120 n.22 (Bankr. S.D.N.Y. 2006).

### ii. Foreign Nonmain Proceedings

Alternatively, if the debtor's COMI is not the same location where the foreign proceeding is pending, the court can recognize the foreign proceeding as a foreign nonmain proceeding. A foreign nonmain proceeding is "a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an *establishment*." 11 U.S.C. § 1502(5) (emphasis added). Section 1502(2) defines an establishment as "any place of operations where the debtor *carries out a nontransitory economic activity*." 11 U.S.C. § 1502(2) (emphasis added). In contrast to COMI, "[t]he existence of an 'establishment' is essentially a factual question, with no presumption in its favor." *In re Bear Stearns*, 389 B.R. at 338.

While Chapter 15 incorporates most of the Model Law's definition of establishment, the Bankruptcy Code notably omits the Model's Law's phrasing that the economic activity be performed "with human means and goods or services." *See* MODEL LAW ON CROSS-BORDER INSOLVENCY Art. 2(f) (UNCITRAL 1997). The legislative history of Chapter 15 mentions the

8

omission as a "minor language [variation] necessary to comport with United States terminology." H.R. REP. NO. 109-31(I), at 107, *as reprinted in* 2005 U.S.C.C.A.N. at 170.  By eliminating the phrase "with human means and goods or services" from the definition of establishment, Congress lowered the threshold for a foreign representative attempting to demonstrate the existence of an establishment.  *See* Ranney-Marinelli, *supra*, at 278.  Now, a foreign representative need only prove the debtor had a "place of operations where the debtor carries out non-transitory economic activity." *See* 11 U.S.C. § 1502(2).

Although the definition of establishment includes several elements, neither Chapter 15 nor the legislative history parse the definition and explain each element.  *See* H.R. REP. NO. 109-31(I), at 107, *as reprinted in* 2005 U.S.C.C.A.N. at 170 (mentioning only that the definition was taken from Model Law Article 2).  However, the Model Law and the sources used to shape its terminology further illuminate Chapter 15's definition of establishment.  The drafters of the Model Law relied on the Convention to define an establishment. *See Guide*, ¶ 75, U.N. Doc. A/CN.9/442 (1997).  Per the Convention's legislative history, a "place of operations" referred to "a place from which economic activities are exercised on the market (*i.e.* externally), whether the said activities are commercial, industrial or professional."  Council, Report on the Convention on Insolvency Proceedings, at 49, No. 6500/96.  And, the Virgos-Schmit Report explains that the mere presence of assets in a given location does not, by itself, constitute an establishment.  *See id.* at 48.  In fact, when drafting the Convention, the European States completely ruled out the idea.  *See id.*  Instead, the Convention adopted an independent concept requiring a more substantial relationship with the foreign country. *See id.*

Additionally, Chapter 15 does not explicitly instruct the court as to the relevant time period that should be examined during the establishment analysis.  *See* 11 U.S.C. § 1517.  However, the

statute speaks in the present tense, noting that a foreign nonmain proceeding can exist where a debtor "*has* an establishment." 11 U.S.C. § 1502(5) (emphasis added). Likewise, Section 1502(2) refers to an establishment as "any place of operations where the debtor *carries* out a nontransitory economic activity." 11 U.S.C. § 1502(2) (emphasis added). The use of the present tense implies that the court's establishment analysis should focus on whether the debtor has an establishment in the foreign country when the foreign representative files for recognition under Chapter 15. The *Bear Stearns* court agreed, noting that "[i]f the debtor does not have its center of main interests or at least an establishment in the country of the foreign proceedings, the bankruptcy court should not grant recognition and is not authorized to use its power to effectuate the purposes of the foreign proceeding." *In re Bear Stearns*, 389 B.R. at 334; *see also In re SPhinX, Ltd.*, 351 B.R. at 120 n.22; Daniel M. Glosband, *SPhinX Chapter 15 Opinion Misses the Mark*, 25 AM. BANKR. INST. J. 44, 45 (Dec./Jan. 2007) (stating that a foreign proceeding will not be recognized if it is pending in a country where the debtor has no establishment). Because courts undertake the establishment analysis when the foreign representative files for recognition, it follows that the court should weigh only the evidence as it exists at the time of filing in the U.S. court.

C.    **Application of Chapter 15**

   1.    **Foreign Main Proceeding**

On remand, the bankruptcy court ruled that Ran's Israeli bankruptcy proceeding did not constitute a foreign main proceeding because the evidence did not demonstrate that Israel is Ran's center of main interest. *In re Ran*, 390 B.R. at 295. The bankruptcy court extensively analyzed the COMI issue, through an exhaustive comparison of COMI or COMI-equivalent case law in the EU, United States, and Israel. Ultimately, the bankruptcy court found that the COMI factors in each nation's bankruptcy system were remarkably similar. *See id.* at 282. Each system considered the

debtor's permanent place of residence or, in the United States, domicile. *Id.* And, both the EU and the Israeli bankruptcy systems employed a "totality of the circumstances" view. *Id.* After weighing all of the evidence of Ran's contacts with Israel, or lack thereof, the bankruptcy court ultimately concluded that Ran's COMI was in the United States. Ran left Israel nearly a decade prior to the filing of the petition, has no intent to return at least in part because of the potential danger to him and his family, and has established employment and a residence in Houston, Texas. *Id.* at 294, 300. And, the record also reflects that Ran maintains his finances exclusively in Harris County. *Id.* at 295. Therefore, the bankruptcy court held that Ran successfully transferred his COMI. *Id.*

These bankruptcy court's findings are not clearly erroneous, thus this court does not disturb them. Likewise, the bankruptcy court's impeccable analysis of the law and application of the law to the facts is sound and requires no further elaboration or clarification from this court. Accordingly, the bankruptcy court's denial of recognition of the Israeli bankruptcy proceeding as a foreign main proceeding is AFFIRMED.

### 2. Foreign Nonmain Proceeding

Despite the thorough examination of the COMI issue, the bankruptcy court commented only briefly on the issue of whether the Israel foreign proceeding can be recognized properly as a foreign nonmain proceeding, merely concluding that it could not. *Id.* at 260.

In order to have a "place of operations," Ran must have "a place from which economic activities are exercised on the market (*i.e.* externally), whether the said activities are commercial, industrial or professional," in the country in which the foreign proceeding is maintained. Council, Report on the Convention on Insolvency Proceedings, at 49, No. 6500/96. From the outset, it stretches credulity to view a bankruptcy proceeding as an industrial or professional activity. Therefore, the only legitimate possibility is that it constitutes a commercial activity. In the corporate

11

debtor context, Daniel M. Glosband, one of the drafters of the Model Law, has stated that "there must be a place of business for there to be an 'establishment.'" Glosband, *supra,* at 45. If a corporation's principal place of business is analogous to a debtor's primary or habitual residence, *see* 11 U.S.C. § 1516(c) (equating a corporate "debtor's registered office" with the "habitual residence in the case of an individual"), presumably a place of business would align with either a secondary residence or possibly a place of employment. Regardless, at the time the petition was filed, Ran possessed neither in Israel.

Further, though a bankruptcy proceeding does pertain to economic matters, it does not comport with traditional notions of economic activity in the marketplace. Assuming *arguendo* that Ran possessed a place of operations in Israel at the time the petition was filed, Ran did not carry out any nontransitory economic activity in Israel, thus failing to meet the remaining requirement of an establishment. The bankruptcy court determined that since Ran's departure in 1997, no economic activity occurred in Israel; rather, the overwhelming weight of the evidence suggests that these activities were performed exclusively in Houston and Harris County, Texas.[3] The only activity occurring in Israel after 1997 was the insolvency proceeding, which was conducted involuntarily and in Ran's absence. Thus, the insolvency proceeding and corresponding debts were the only evidence of a purported establishment in Israel existing at the time Lavie filed the petition for recognition in the Southern District of Texas. *See In re Ran*, 390 B.R. at 260 n.1.

Although the debts at issue are, at best, evidence of previous economic activity, it does not follow that the economic activity was in existence at the time the petition for recognition was filed, nearly ten years after Ran's departure.

---

[3] Arguably, some of the debt collection activities of Credit Lines extended into 1998, but this does not alter the analysis because, as outlined previously, the court must consider only the facts and circumstances existing at the time the petition for recognition is filed in the U.S. court.

And, the very activities that, at one time, may have formed a basis for finding that Ran had an establishment in Israel, were in fact transitory. They, namely Ran's acquisition and maintenance of a residence, employment, and maintenance of his financial accounts, have ceased entirely in Israel and commenced in Houston and Harris County, Texas.

Moreover, Lavie, as the trustee of Ran's estate, is not Ran's agent and cannot act on behalf of Ran. *See* 11 U.S.C. § 323 (2006); *see also In re Obie Elie Wrecking Co., Inc.*, 35 B.R. 114, 115 (Bankr. N.D. Ohio 1983) (stating that the trustee is not an agent of the debtor but merely a representative of the estate who works for the benefit of the creditors of the estate). Since no principal–agent relationship exists between Ran and Lavie, Lavie cannot "carry out" any activity for Ran, economic or otherwise.

Notably, no U.S. court has decided whether an individual's foreign bankruptcy proceeding and related debts, alone, are sufficient for a court to find an establishment under Chapter 15. But, this court observes that recognition based on the existence of the bankruptcy proceeding and debts, alone, poses two key problems. First, by definition, an insolvency proceeding is a transitory action. WEBSTER'S NEW INTERNATIONAL DICTIONARY 2692 (2d ed. 1939) (defining "transitory action" as "[a]n action which may be brought in any county, [such] as actions for debt, etc."). Transitory actions are tied to the person, rather than a location. *See* BLACK'S LAW DICTIONARY 34 (8th ed. 2004) (observing that transitory action are "universally founded on the supposed violation of rights which, in contemplation of law, have no locality"). In stark contrast, the concept of establishment is location-oriented, in that it focuses on the "place of operations" in which the activity occurs. It would seem an odd result to permit a transitory action to suffice as the basis for finding nontransitory economic activity.

13

Second, if the proceeding and associated debts, alone, could suffice to demonstrate an establishment, it would essentially rule out the possibility that any proceeding would fall into the third, more nebulous category of proceedings that are neither foreign main nor foreign nonmain. But, this third category was clearly envisioned by the drafters. Therefore, such an interpretation would be contrary to statutory intent and thus violate a key canon of statutory interpretation.

Moreover, courts have resolved cases involving corporate debtors with far more significant activities in the foreign forum without finding the existence of an establishment. For example, in *Bear Stearns*, the district court reviewed and affirmed the bankruptcy court's finding of non-recognition. *In re Bear Stearns*, 389 B.R. at 338–39. The corporate debtors in *Bear Stearns* were Cayman Islands limited liability companies with registered offices in the Cayman Islands; however, a Massachusetts corporation administered the funds managed by the debtors. *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 124 (Bankr. S.D.N.Y. 2007). The administrator handled all significant activities of the debtors, including all day-to-day administrative services. *Id.* The debtors' activities in the Cayman Islands consisted of auditing activities and the preparation of incorporation papers by a third party. *In re Bear Stearns*, 389 B.R. at 339. And, two of the funds' directors resided in the Cayman Islands, yet neither was substantially involved in the debtors' business. *Id.* at 338. Due to a struggling economy, the funds lost much of their value. As a result, the board of directors filed winding-up petitions in the Cayman Islands. *Id.* at 329. At the time the petition for recognition was filed in the U.S. court, the debtors had no assets in the Cayman Islands. *Id.* at 339. Notwithstanding these facts, the district court affirmed the bankruptcy court, concluding that the foreign representative failed to put forth facts demonstrating an establishment and, thus, did not demonstrate that the proceeding was entitled to recognition as a foreign nonmain proceeding. *See id.* at 338–39.

By way of comparison, in the instant case, at the time the petition for recognition was filed, Ran maintained far less contact with Israel than the *Bear Stearns* debtors did with the Cayman Islands. Ran conducted no activities that would rise to the level of auditing or the preparation of incorporation papers. Regardless, even that level of activity did not rise to the level of an establishment. *See In re Ran*, 390 B.R. at 260 n.1. And, while the *Bear Stearns* debtors had a registered office and directors living in the Cayman Islands, Ran had no office or secondary residence in Israel. *Id.*

Acknowledging the novelty of the issue presented, this court does not attempt to define the scope of the universe of possible activities that would and would not suffice in demonstrating the existence of an individual debtor's establishment. Rather, the court concludes only that the evidence presented with respect to Ran is insufficient to support a finding that Ran has an establishment in Israel. It, thus, follows that the Israeli proceeding does not constitute a foreign nonmain proceeding. Therefore, the bankruptcy court's denial of recognition of the Israeli proceeding as a foreign nonmain proceeding is AFFIRMED.

### III. CONCLUSION

The court recognizes that there is some level of unfairness in a debtor's avoidance, or attempted avoidance, of his debts via relocation. Notwithstanding this observation, and without suggesting that laches could or should apply,[4] the court notes that because the trustee failed to bring suit under Chapter 15's predecessor, Section 304, over a period of many years, a "window of

---

[4] "Congress did not include language in §§ 1509, 1515, or 1517 which suggests that a court is permitted to include equitable considerations in its determination of whether the perquisites for foreign proceeding recognition have been met. [However, other courts have] previously declined to exercise general equitable powers when Congress has not previously given the courts explicit authorization to exercise equitable discretion." *In re Loy*, 380 B.R. 154, 168 (Bankr. E.D. Va. 2007).

15

opportunity" was created for the debtor.  It is likely that a prompt petition for recognition may avoid a similar result under like circumstances in future cases.  Moreover, 11 U.S.C. § 1509(f) provides that "the failure of a foreign representative to commence a case or to obtain recognition under this chapter does not affect any right the foreign representative may have to sue in a court in the United States to collect or recover a claim which is property of the debtor."  11 U.S.C. § 1509(f); *see also In re Loy*, 380 B.R. 154, 166 (Bankr. E.D. Va. 2007); *Iida v. Kitahara*, 377 B.R. 243, 258 (9th Cir. BAP 2007).  Therefore, relief is not *wholly* foreclosed where recognition is not achieved.

The court has reviewed the bankruptcy court's extensive COMI analysis, and concurs with the law applied, reasoning, and conclusion of the bankruptcy court.  Therefore, the court AFFIRMS the bankruptcy court's denial of recognition of the Israeli proceeding as a foreign main proceeding.

Additionally, the evidence presented is insufficient to demonstrate that Ran had an establishment in Israel at the time the petition for recognition was filed.  Thus, the Israeli proceeding is not entitled to recognition as a foreign nonmain proceeding.  And, therefore, the bankruptcy court's denial of foreign nonmain recognition is AFFIRMED.

It is so ORDERED.

Signed at Houston, Texas on March 30, 2009.

_____
Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY